UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| KATHLEEN A. KRISTIANSEN, )<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>TOWN OF KITTERY et al., )<br>)<br>Defendants ) | No. 2:18-cv-00420-JHR |

***MEMORANDUM DECISION ON MOTION FOR SUMMARY JUDGMENT***

In this civil rights action, the plaintiff alleges that various officers of the Kittery Police Department failed to arrest a man who sexually assaulted her when she was a minor in the late 1970s and withheld that man's written confession from her until 2011, when it was too late to prosecute him. *See* Complaint for a Civil Suit ("Complaint") (ECF No. 1). She seeks relief under 42 U.S.C. §§ 1983 and 1985 for what she claims were violations of her constitutional rights and a conspiracy to cover up her assault. *See id.* at 9. The defendants remaining in this case – the Town of Kittery, Edward F. Strong, Robert S. Hundley, and Steve Hamel – have filed a motion for summary judgment on all claims. *See* Defendants' Motion for Summary Judgment ("Motion") (ECF No. 57) at 1. Because I conclude that the plaintiff's claims are time-barred, I grant the defendants' motion.

**I. Summary Judgment Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Ahmed v. Johnson*, 752 F.3d 490, 495 (1st Cir. 2014). "A dispute is genuine if 'the evidence about the fact is such that a reasonable jury could resolve the point in favor of the

non-moving party.'" *Johnson v. Univ. of P.R.*, 714 F.3d 48, 52 (1st Cir. 2013) (quoting *Thompson v. Coca-Cola Co.*, 522 F.3d 168, 175 (1st Cir. 2008)). "A fact is material if it has the potential of determining the outcome of the litigation." *Id.* (quoting *Maymi v. P.R. Ports Auth.*, 515 F.3d 20, 25 (1st Cir. 2008)).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. *Johnson,* 714 F.3d at 52. Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." *Brooks v. AIG SunAm. Life Assur. Co.*, 480 F.3d 579, 586 (1st Cir. 2007) (quoting *Clifford v. Barnhart,* 449 F.3d 276, 280 (1st Cir. 2006) (emphasis omitted)); Fed. R. Civ. P. 56(c). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." *In re Spigel*, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal punctuation omitted).

The evidence that the court may consider in deciding whether genuine issues of material fact exist for purposes of summary judgment is circumscribed by the local rules of this district. *See* Local Rule 56. The moving party must first file a statement of material facts that it claims are not in dispute. *See* Local Rule 56(b). Each fact must be set forth in a numbered paragraph and supported by a specific record citation. *See id*. The nonmoving party must then submit a responsive "separate, short, and concise" statement of material facts in which it must "admit, deny

or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts[.]" Local Rule 56(c). The nonmovant likewise must support each denial or qualification with an appropriate record citation. *See id*. The nonmoving party may also submit its own additional statement of material facts that it contends are not in dispute, each supported by a specific record citation. *See id*. The movant then must respond to the nonmoving party's statement of additional facts, if any, by way of a reply statement of material facts in which it must "admit, deny or qualify such additional facts by reference to the numbered paragraphs" of the nonmovant's statement. *See* Local Rule 56(d). Again, each denial or qualification must be supported by an appropriate record citation. *See id*.

Local Rule 56(f) directs that "[f]acts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted." In addition, "[t]he court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment" and has "no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of fact." *Id*.; *see also, e.g., Borges ex rel. S.M.B.W. v. Serrano-Isern*, 605 F.3d 1, 5 (1st Cir. 2010); Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion[.]").

## II. Procedural History

The plaintiff filed her *pro se* complaint on October 11, 2018. *See* Complaint. Two defendants – the Town of Kittery and the Kittery Police Department – filed a motion to dismiss the claims against them, *see* Defendants Town of Kittery and Kittery Police Department's Motion to Dismiss (ECF No. 8), which was granted with respect to the Kittery Police Department and

denied with respect to the Town of Kittery, *see* Recommended Decision on Motion to Dismiss (ECF No. 11); Order Affirming Recommended Decision (ECF No. 20). Thereafter, the parties consented to have me preside over all proceedings in this action, including the entry of judgment. *See* Consent to Magistrate Judge (ECF No. 31).

The plaintiff obtained counsel, who entered his appearance in June 2020. *See* Notice of Appearance by James P. Loring (ECF No. 41). In October 2020, the defendants filed a notice of their intent to move for summary judgment, *see* Defendants' Notice of Intent to File Summary Judgment Motion and Request for Pre-Filing Conference (ECF No. 47), and I conducted a pre-filing conference in November 2020 pursuant to Local Rule 56(h), *see* Report of Pre-Filing Conference Under Local Rule 56(h) (ECF No. 56). The defendants filed their motion for summary judgment and accompanying statement of material facts in January 2021. *See* Motion; Defendants' Statement of Material Facts (DSMF) (ECF No. 60). Subsequently, the plaintiff's attorney moved to withdraw. *See* Assented-to Motion to Withdraw as Counsel for the Plaintiff (ECF No. 61). While that motion to withdraw was pending, the plaintiff filed a *pro se* response to the defendants' motion for summary judgment. *See* [Plaintiff's Response in Opposition to Motion for Summary Judgment] ("Response") (ECF No. 63).

I held a hearing on the motion to withdraw in February 2021, *see* Minute Entry (ECF No. 67), during which I indicated to the plaintiff that I would not normally permit counsel to withdraw in the midst of summary judgment briefing due to the technical nature of the process. The plaintiff and her attorney represented that when the attorney had become ill with COVID-19, the plaintiff opted to draft her response to the defendants' motion herself rather than request an extension of time. They also assured me that (i) their parting was amicable, (ii) the attorney had been available to the plaintiff during the drafting of her response had she asked for assistance with

the more technical aspects of summary judgment, (iii) the plaintiff was comfortable proceeding with her case on a *pro se* basis, and (iv) she was satisfied with her response to the defendants' motion for summary judgment as she had drafted it. Based on those representations, I granted the motion to withdraw. *See* Order Granting without Objection Motion to Withdraw as Attorney (ECF No. 68).

The following month, the defendants filed their reply to the plaintiff's response. *See* Defendants' Reply Memorandum in Support of Motion for Summary Judgment ("Reply") (ECF No. 69). They pointed out that the plaintiff had failed to admit, deny, or qualify any of the facts contained in their statement of material facts in accordance with Local Rule 56(c) and argued that their facts should, therefore, be deemed admitted. *See id.* at 1. Thereafter, the plaintiff filed a document styled as an amended response to the defendants' motion for summary judgment in which she attempted to address the technical deficiencies identified by the defendants. *See* Plaintiff's Amended [Response] to Defendants['] Motion for Summary Judgment with Opposing Facts ("Amended Response") (ECF No. 73). I subsequently permitted the defendants to file a limited response in opposition to the plaintiff's amended response, which they did in late April 2021. *See* Order Granting Motion for Leave to File Limited Response (ECF No. 79); Defendants' Limited Response to Plaintiff's Amended and Supplemental Summary Judgment Filings ("Defendants' Limited Response") (ECF No. 80).

### III.  Factual Background

#### A.  Defendants' Facts Deemed Admitted

Before outlining the facts, I must first address the defendants' assertion that the plaintiff has failed to abide by Local Rule 56 in her summary judgment briefing and, if the defendants are correct, how that failure impacts the facts I consider in deciding their motion.

By way of background, the First Circuit has frequently emphasized the importance of local summary judgment rules such as Local Rule 56. *See, e.g.*, *Cabán Hernández v. Philip Morris USA, Inc.*, 486 F.3d 1, 7 (1st Cir. 2007). The procedural requirements of Local Rule 56, as outlined above, are designed to focus the "court's attention on what is – and what is not – genuinely controverted[,]" *Calvi v. Knox Cnty.*, 470 F.3d 422, 427 (1st Cir. 2006), and to prevent "parties from shifting to the . . . court the burden of sifting through the inevitable mountain of information generated by discovery in search of relevant material[,]" *P.R. Am. Ins. Co. v. Rivera-Vázquez*, 603 F.3d 125, 131-32 (1st Cir. 2010) (citation and internal quotation marks omitted). Given these important purposes, the First Circuit has warned that litigants ignore the requirements of rules like Local Rule 56 at their own peril. *See Ruiz Rivera v. Riley*, 209 F.3d 24, 28 (1st Cir. 2000), *abrogated on other grounds by De Aza-Paez v. United States*, 343 F.3d 552 (1st Cir. 2003).

The plaintiff's original response to the defendants' motion contravenes Local Rule 56 in several ways. Most importantly, it fails to admit, deny, or qualify any of the defendants' 88 statements of fact. *Compare* DSMF *with* Response at 2-16; *see also* Local Rule 56(c); *Learnard v. Inhabitants of Van Buren*, 182 F. Supp. 2d. 115, 119-20 (D. Me. 2002) (noting that it is not the court's job to "pore through the record and try to glean which of the Plaintiff's statements admits, denies, or qualifies which of the Defendants'"). Moreover, regardless of whether the plaintiff's response is construed as an "opposing" or an "additional" statement of facts, it fails to qualify as "separate, short and concise" or to supply, with respect to every statement, "a citation to the specific page or paragraph of identified record material supporting the assertion." Local Rule 56(c), (f). Instead, the plaintiff's response contains 37 numbered paragraphs, consisting of nearly 200 sentences, that set forth facts – interspersed with opinion and argument – that are largely unsupported by any record citations. *See* Response at 2-16. And the few record citations that are

included generally fail to point to specific pages or paragraphs in the cited material. *See id.*; Local Rule 56(f) ("The court shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts.").

The plaintiff's attempt to fix these shortcomings in an amended response falls flat for two reasons. First, because the plaintiff explicitly reaffirmed her confidence in her original response during the hearing on her former counsel's motion to withdraw, I agree with the defendants that she has not shown good cause for allowing her a do-over after the defendants expended significant time and energy replying to her original response. *See* Defendants' Limited Response at 2-3.[1] Second, even if I were to consider the plaintiff's amended response, it fails to comply with Local Rule 56 in much the same manner as her original response. Indeed, the only discernible difference between the plaintiff's original and amended responses is that she purports to admit and/or deny the defendants' facts in her amended response. *Compare* Response *with* Amended Response. However, because she does not reference each of the defendants' facts by paragraph number and, more importantly, does not support her denials with any record citations, her amended response does not properly controvert the defendants' facts either. *See* Amended Response at 1-4; Local Rule 56(c).[2]

The plaintiff's *pro se* status does not excuse her noncompliance with Local Rule 56. First and foremost, as the defendants point out, *see* Defendants' Limited Response at 2-3, the

---

[1] The plaintiff argues that Federal Rule of Civil Procedure 56(e) gives parties "the opportunity to amend their reply to properly address the other parties' assertion of facts[.]" Amended Response at 1. In actuality, the rule gives courts discretion in deciding how to treat a party's failure to properly address a fact. *See* Fed. R. Civ. P. 56(e). Courts may, among other options, "give an opportunity to properly . . . address the fact" *or* "consider the fact undisputed for purposes of the motion[.]" *Id.*

[2] The plaintiff also filed a supplemental affidavit apparently to support to the facts she put forth in her response and amended response. *See* Plaintiff's Supplemental Affidavit in Support of Plaintiff's Statement of Facts (ECF No. 71). She did not, however, cite to the supplemental affidavit in her amended response, so it does nothing to remedy her violations of Local Rule 56. *See* Local Rule 56(f) ("The court shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts.").

plaintiff was not unrepresented when she filed her response. Rather, she chose to draft her response on her own and, in doing so, apparently opted not to utilize her counsel's available expertise. *See FDIC v. Anchor Props.*, 13 F.3d 27, 31 (1st Cir. 1994) (noting that a plaintiff's "characterization of himself as a pro se litigant [wa]s at best dubious" when he appeared on his own behalf at a summary judgment hearing but "had no fewer than two attorneys of record"). Moreover, even if the plaintiff were a more typical *pro se* filer, the First Circuit has consistently held that a party's unrepresented status does not absolve her of the obligation to follow the court's procedural rules. *See, e.g., Ruiz Rivera*, 209 F.3d at 28 n.2; *Anchor Props.*, 13 F.3d at 31; *see also Lacadie v. Town of Milford*, Civ. No. 07-101-B-W, 2008 WL 1930410, at *2 (D. Me. May 1, 2008) (rec. dec., *aff'd* June 19, 2008) ("Proceeding *pro se* does not otherwise relieve a litigant of the usual requirements of summary judgment . . . ." (alterations, citations, and internal quotation marks omitted)).

As Judge Hornby noted in a recent decision on summary judgment, "Judges reviewing summary judgment motions must be able to rely on procedural rules so as to avoid becoming the lawyer for the unrepresented plaintiff or devoting an excessive portion of their time to such cases." *Murray v. Walmart Stores Inc.*, Civil No. 2:15-cv-00484-DBH, 2019 WL 6689900, at *5 (D. Me. Dec. 6, 2019) (citation and internal quotation marks omitted). To excuse the plaintiff's failures to comply with Local Rule 56 would undermine the important functions served by the rule and leave the court to do the plaintiff's work of identifying whether there are any triable issues of fact; not only would that exceed the court's proper role, but it would also be unfair to the defendants. *See P.R. Am. Ins. Co.*, 603 F.3d at 132 (noting that local summary judgment rules "must be administered evenhandedly and applied consistently" to ensure the "[f]undamental fairness" of the process, and that courts may only deviate from such rules when there is "a sound reason for doing

so" and "no party's substantial rights are unfairly jeopardized") (citation and internal quotation marks omitted); *Rodríguez-Díaz v. Cruz-Colón*, 878 F. Supp. 2d 333, 338 (D.P.R. 2012) ("By submitting completely non-responsive opposing statements of facts, Plaintiff asks the court to reconcile [hundreds of] statements of fact and then discern whether any genuine issue of material fact exists. That is not the proper role of the court and the court will not endeavor to do Plaintiff's work for him.") (footnote omitted).

Accordingly, in light of the plaintiff's failure to properly controvert the defendants' facts and or to set forth additional facts in accordance with the requirements of Local Rule 56, I deem the defendants' facts admitted and disregard the statements of fact in the plaintiff's response and amended response. *See Cabán Hernández*, 486 F.3d at 6-8 (affirming a district court decision to deem a moving party's statement of material facts admitted and disregard an opposing party's responsive statement where the opposing party failed to admit, deny, or qualify the moving party's statement of material facts and failed to support its facts with specific citations to the record in contravention of the local summary judgment rules); *Learnard*, 182 F. Supp. 2d at 119-20 & n.1 (deeming a moving party's statement of material facts admitted and disregarding the opposing party's responsive statement because it failed to admit, deny, or qualify any of the moving party's facts and contravened Local Rule 56 in several other ways); *Dermalogix Partners, Inc. v. Corwood Labs., Inc.*, No. Civ. 99-149-P-C, 2000 WL 760732, *1 n.1 (D. Me. Mar. 14, 2000) (deeming a moving party's statement of material facts admitted and disregarding the opposing party's responsive statement "altogether" because it failed to comply with Local Rule 56).[3]

---

[3] Because I am disregarding the plaintiff's facts, I need not consider the defendants' reply to those facts or the plaintiff's opposition to the defendants' reply. *See* Defendants' Reply Statement of Material Facts (ECF No. 70); Plaintiff's Objections to Defendant[s'] Reply Statement of Material Facts (ECF No. 74); *Rodríguez-Díaz*, 878 F. Supp. 2d at 338 n.1 ("[A]s the court has excluded Plaintiff's opposing statements of uncontested fact, the court need not analyze Defendants['] reply."). I will, however, consider the legal arguments raised by the plaintiff in her original response – to the extent they do not rely on facts not properly before me – and the defendants' reply to those legal arguments.

That the defendants' facts are the only ones properly before me does not, however, automatically entitle them to summary judgment. Rather, I must still inquire whether the defendants have met their burden to demonstrate undisputed facts entitling them to summary judgment as a matter of law. *See Szillery v. Career Sys. Dev. Corp.*, No. CV-08-62-B-W, 2008 WL 2789492, at *2 (D. Me. July 17, 2008) ("[E]ven if the *pro se* plaintiff fails to respond to the statements of material fact, the court is still required to inquire whether the moving party has met its burden to demonstrate undisputed facts entitling it to summary judgment as a matter of law.") (citation and internal quotation marks omitted).

### B.  Undisputed Facts

For summary judgment purposes, the facts in the defendants' statement of material facts, deemed admitted to the extent they are supported by the record citations given, *see* Local Rule 56(f), reveal the following.

On March 12, 1978, the plaintiff's father reported to the Kittery Police Department that the plaintiff had run away from home in New Hampshire and had been seen at an apartment building on Government Street in Kittery. DSMF ¶ 14. Kittery police officers were unable to locate her at the Government Street apartment building, but Officer Ronald Avery obtained information indicating that the plaintiff had been seen there drinking alcohol in the apartment of a 31-year-old man named Glenn Erlandson. *Id.* ¶¶ 15-16, 77. After the plaintiff was located, she was interviewed by Portsmouth Police Department Youth Aide Mary Larin; the plaintiff told Larin that Erlandson had provided her and a friend with alcohol and had begun kissing and fondling her at which point she freed herself from him and left. *Id.* ¶¶ 17-18. During an interview with Avery and Larin on March 17, 1978, the plaintiff reported that she had been raped by Erlandson in August or September 1977 while under the influence of alcohol that he had provided her. *Id.* ¶ 19.

On March 24, 1978, Erlandson agreed to provide a written statement to Avery regarding his relationship with the plaintiff. *Id.* ¶ 21. In his written statement, Erlandson admitted to meeting the plaintiff in August or September 1977 but said he had first had sexual contact with her, which did not include intercourse, a month or two after they first met. *Id.* ¶ 23. Erlandson wrote that the plaintiff had told him she was 17 years old at the time, and he described any sexual contact between them as voluntary and initiated by the plaintiff. *Id.* ¶¶ 24, 26. He did not state that he had provided the plaintiff with any alcohol. *Id.* ¶ 26.

The day after obtaining Erlandson's written statement, Avery met with York County Assistant District Attorney Joseph Warnermarker. *Id.* ¶ 33. Warnermarker told Avery that the District Attorney's Office would pursue charges against Erlandson of assault and endangering the welfare of a child. *Id.* ¶ 33. On April 3, 1978, however, Avery, Larin, the plaintiff, the plaintiff's parents, and Erlandson met and reached an agreement whereby Erlandson would be ordered to stay away from the plaintiff, the plaintiff would be directed to stay out of Kittery, and no criminal charges would be pursued. *Id.* ¶ 35.

Twenty-four years later, in 2002, the plaintiff contacted Kittery Police Detective Steve Hamel regarding her 1970s rape allegation against Erlandson. *Id.* ¶ 83. Hamel told her that he would investigate the matter but never contacted her to update her on the investigation and did not respond when she attempted to contact him on several subsequent occasions. *Id.* ¶¶ 83-84.

In May 2011, Hamel received a call from Portsmouth Police Department Detective Kristyn Bernier to discuss a complaint that she had received from the plaintiff regarding the alleged rape in the 1970s. *Id.* ¶ 38. Bernier told Hamel that the plaintiff had supplied her with four handwritten statements describing the reported rape and other interactions with Erlandson. *Id.* ¶ 39. That same month, Hamel attended a videotaped interview of the plaintiff conducted by Bernier in which the

plaintiff described an incident in January 1977 during which Erlandson had removed her clothes and had intercourse with her. *Id.* ¶¶ 40-41. Following the interview, Hamel provided a recording of the interview along with his report and the plaintiff's handwritten statements to the York County District Attorney's Office for a decision regarding a criminal prosecution of Erlandson. *Id.* ¶ 42.

Thereafter, Hamel had a conversation with Avery and learned that Avery had investigated an incident involving the plaintiff and Erlandson decades earlier. *Id.* ¶ 43. Avery couldn't remember much about the case except that it had ended without a criminal prosecution by agreement of all involved. *Id.* In July 2011, Hamel located Avery's original 1978 file and noted that the August or September 1977 date of the alleged rape that the plaintiff provided to Avery and Larin in March 1978 was inconsistent with the January 1977 date she provided in her interview with Bernier. *Id.* ¶ 46. Hamel also originally believed that Erlandson admitted to having sex with the plaintiff when she was 13, as she was claiming in 2011, but he later learned that the plaintiff would have been 14 years old in the late summer and fall of 1977, which is when Erlandson admitted to having sexual contact with the plaintiff. *Id.* ¶¶ 47-48. Hamel provided the entire original 1978 investigative file, including Erlandson's written statement, to the York County District Attorney's Office. *Id.* ¶ 50.

Assistant District Attorney Thaddeus West was assigned to determine whether a criminal prosecution could be initiated against Erlandson in 2011 for an alleged rape that occurred in 1977. *Id.* West reviewed the entire 1978 investigative file and determined that Erlandson had not admitted to any conduct in his March 1978 statement for which he could have been charged with rape or gross sexual misconduct in 1978. *Id.* ¶ 51. Based on his review of the plaintiff's claims, West concluded that the statute of limitations for charging Erlandson for the alleged 1977 rape would have expired in the mid-1980s at the latest. *Id.* ¶¶ 52-55. At Hamel's request, West met

with the plaintiff and two victim advocates on March 8, 2012, and explained his conclusion that the statute of limitations barred a prosecution of Erlandson at that time. *Id.* ¶¶ 56-58. The plaintiff subsequently obtained a copy of the 1978 investigation file in March or April 2012. *Id.* ¶¶ 62-64.

### IV. Discussion

In her complaint, the plaintiff alleges that the defendants violated her constitutional rights when they failed to arrest and/or charge Erlandson in 1978 and conspired to hide his confession from her until 2011, when it was too late to prosecute him. *See* Complaint at 6-9. She brings equal protection and other constitutional claims pursuant to 42 U.S.C. § 1983, as well as a civil rights conspiracy claim pursuant to 42 U.S.C. § 1985, against (i) Hamel, (ii) Hundley, who was the chief of the Kittery Police Department in 1978, (iii) Strong, who was the chief of Kittery Police Department when the plaintiff had contact with Hamel in 2002 and 2011-12, and (iv) the Town of Kittery. *See id.* at 2-9; DSMF ¶¶ 1, 68. She originally also brought claims against both Avery and Gary D. Finley, who worked for the Kittery Police Department in 1978. *See* Complaint at 2-3, 6-7. However, she did not object to the dismissal of her claims against Avery following his death in March 2020, *see* Defendants' Statement Noting Death of Party Pursuant to F.R.Civ.P. 25 (ECF No. 35); Order Granting without Objection Motion to Dismiss (ECF No. 46), and stipulated to the dismissal of her claims against Finley, *see* Stipulation of Dismissal [of Defendant Gary D. Finley] (ECF No. 55).

Sections 1983 and 1985 "borrow the forum state's statute of limitations for personal injury claims[,]" *Rodríguez-García v. Mun. of Caguas*, 354 F.3d 91, 96 (1st Cir. 2004), "as well as its coordinate tolling rules," *Ouellette v. Beaupre*, 977 F.3d 127, 135 (1st Cir. 2020) (citation and

13

internal quotation marks omitted).[4] Maine's statute of limitations for all unenumerated civil actions, including personal injury torts, is six years from the date of accrual. *See* 14 M.R.S.A. § 752 (Westlaw through 2021 1st Special Sess.). Under Maine's related tolling statute, a cause of action that accrues while a plaintiff is a minor will not expire until six years after the plaintiff reaches the age of majority. *See* 14 M.R.S.A. § 853 (Westlaw through 2021 1st Special Sess.); *Ouellette*, 977 F.3d at 135.[5]

"Although federal courts look to state law for the statute of limitations and tolling principles," the date a section 1983 or 1985 claim accrues "is a question of federal law that is not resolved by reference to state law." *Ouellette*, 977 F.3d at 135. Generally, a claim accrues when a "plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (citations and internal quotation marks omitted). A "plaintiff has a complete and present cause of action when all of the acts comprising the specific constitutional violation have been completed." *Ouellette*, 977 F.3d at 136 (citations and internal quotation marks omitted). "However, pursuant to the federal discovery rule, accrual is delayed until the plaintiff knows, or should know of those acts." *Id.* For section 1985 claims involving a continuing conspiracy to violate civil rights, "the statute of limitations runs separately from the occurrence of each civil rights violation that causes actual damage to the plaintiff (as long

---

[4] The plaintiff cites *Meiselman v. Richardson*, 743 F. Supp. 143 (E.D.N.Y. 1990), for the proposition that there is no statute of limitations for federal civil rights violations. *See* Response at 19-20. She is correct to a certain degree; neither section 1983 nor section 1985 contain built-in statutes of limitations. However, as the *Meiselman* court noted, "Congressional silence did not provide plaintiffs an unlimited time within which to commence" a section 1983 action. *Meiselman,* 743 F. Supp. at 145. "Rather, the courts must look to an appropriate state statute to govern such actions[.]" *Id.*

[5] Section 752 has not been amended since 1978. *See* 14 M.R.S.A. § 752 (Westlaw) (listing the legislative history of section 752 and noting that it was last amended in 1963). Section 853 has been amended twice since 1978, but not in a substantive way. *See* 14 M.R.S.A. § 853 (Westlaw) (listing the legislative history of section 853 and noting that it was amended in 1985 and 2013); P.L. 1985, ch. 343, § 2 (amending the cross-references in section 853); P.L. 2013, ch. 329, § 1 (same).

as the plaintiff knows or should have known of the injury)." *Nieves v. McSweeney*, 241 F.3d 46, 51 (1st Cir. 2001).

The plaintiff was 14 years old in March 1978 when Avery investigated her allegations against Erlandson and failed to arrest or charge him. *See* DSMF ¶ 27. She reached the age of majority in 1981. Thus, under Maine's statute of limitations and tolling provision, she would have had to bring any claims against the defendants that accrued in 1978 by no later than 1987. *See* 14 M.R.S.A. §§ 752, 853 (Westlaw).

With regard to the plaintiff's contact with Hamel in 2002 and his failure to investigate her allegations against Erlandson and/or follow up with her, any claims that accrued during that time period would have had to have been brought by approximately 2008. As the defendants point out, *see* Motion at 15-16, even giving the plaintiff the benefit of the doubt and assuming that it took her a few years to realize that Hamel was not going to do anything with her case, her October 2018 complaint is clearly untimely as to any claims that accrued by the mid-2000s. *See* 14 M.R.S.A. § 752 (Westlaw).

That leaves the 2011-12 time period. The plaintiff had contact with Hamel again in May 2011, learned around that same time of the existence of Erlandson's 1978 written statement, was told by West in March 2012 that the York County District Attorney's Office had concluded that the statute of limitations barred prosecution of Erlandson, and received a copy of the entire 1978 investigation file, including Erlandson's statement, no later than April 2012. *See* DSMF ¶¶ 40, 58, 61, 63-64, 66.

The plaintiff alleges that Erlandson's statement was a confession that the defendants kept hidden from her for decades and seems to suggest that the discovery of the statement illuminated the defendants' liability. *See* Complaint at 6. The defendants dispute that Erlandson confessed to

15

any crime in his statement. *See* Motion at 9-11.[6] Even accepting the plaintiff's characterization of the statement as a confession, however, and assuming that she could not have brought any of her claims before she learned of its existence, she had a copy of the statement in her possession by April 2012. *See* DSMF ¶¶ 63-64. Accordingly, all the facts underlying the plaintiff's claims – the failure to arrest and/or charge Erlandson, the failure to investigate in 2002, and the hiding of the confession until 2011 when it was too late to prosecute Erlandson – were revealed to her by no later than April 2012 and thus accrued more than six years before she filed her complaint in October 2018. *See Ouellette*, 977 F.3d at 139 (noting that a claim accrues "once a plaintiff is armed with the necessary factual predicate to file suit, including knowledge of both an injury and the injury's likely causal connection with the putative defendant[s]").[7]

In summary, even when viewed in the light most favorable to the plaintiff as the nonmoving party, the facts before me on summary judgment establish that the plaintiff's claims – whether based on conduct by the defendants in 1978, 2002, or 2011-12 – all accrued more than six years before she filed her complaint in October 2018. They are, therefore, barred by Maine's six-year statute of limitations, and the defendants are entitled to summary judgment on that basis. *See* 14 M.R.S.A. § 752 (Westlaw).[8]

---

[6] The defendants correctly point out that Erlandson only admitted in his statement to having consensual sexual contact with the plaintiff when she would have been 14, which was the age of consent in Maine in 1978. *See* Motion at 9-11; [Statement of Glenn Erlandson dated March 24, 1978], contained in Exh. A to Declaration of Steven Hamel (ECF No. 60-1), at 22-25; 14 M.R.S.A. §§ 252, 253 (Pamph. 1978) (defining the crimes of rape and gross sexual misconduct).

[7] The plaintiff also alleges in her complaint that Hamel failed to turn over evidence from his 2011 investigation to the York County District Attorney's Office. *See* Complaint at 8-9. Even if the plaintiff's claims based on that alleged failure accrued within six years of the filing of her complaint – which is unlikely given that the plaintiff seems to suggest that she learned of this alleged failure in September 2011, *see* Response ¶ 19, and had possession by April 2012 of the file turned over to the District Attorney's Office, *see id.* ¶ 22 – the claims nevertheless fail because the plaintiff has not properly controverted the defendants' statement of fact indicating that Hamel did turn over the evidence from his 2011 investigation to the District Attorney's Office, *see* DSMF ¶ 42.

[8] Given this conclusion, I need not and do not reach the defendants' additional arguments as to why they are entitled to summary judgment. *See* Motion at 17-42.

16

## V. Conclusion

For the foregoing reasons, I **GRANT** the defendants' motion for summary judgment as to all claims against them.

Dated this 6th day of September, 2021.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge
